**Affirmed and Plurality Opinion and Concurring Opinions filed January 17, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00804-CV

## M.B. "BENNY" DANESHJOU, INDIVIDUALLY AND AS THE REPRESENTATIVE OF DANESHJOU COMPANY, INC., Appellant

### V.

## ROBERT H. BATEMAN AND BATEMAN/PUGH, PLLC, Appellees

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-49701**

## C O N C U R R I N G   O P I N I O N

Because I believe that the plurality opinion relies too heavily on dicta from the Texas Supreme Court's opinion in *Keck, Mahin & Cate v. National Union Fire Insurance Co.*, 20 S.W.3d 692, 703 (Tex. 2000), and thereby applies an improper measure of damages, but otherwise reaches the correct disposition in this case, I respectfully concur.

In *Keck*, an excess insurance carrier sued the primary insurance carrier, as

well as defense counsel in an underlying litigation, for negligence which allegedly caused the excess carrier to pay an amount that was higher than a pretrial demand to settle a case against the insured. *Id*. at 695. The primary issues in the appeal involved the scope and validity of a release agreement as well as certain issues relating to equitable subrogation. *Id*. at 696-703. The parties apparently agreed that the settlement was for an excessive amount; they disagreed merely as to whose fault caused the excessive settlement. *Id*. at 703.

In remanding for a new trial, the Texas Supreme Court advised that to be entitled to any damages, the excess carrier would have to prove that the amount it paid to settle the case was "excessive in the abstract, yet reasonable under these circumstances because of the defense provided." *Id*. The court went on to explain,

> If the value of the case with a competent defense would have equaled or exceeded [the settlement amount], then [the excess carrier] suffered no harm regardless of whether [the primary carrier or defense counsel] mishandled the insured's defense. Even if [the excess carrier] can prove that its settlement was excessive, it must also prove that [the primary carrier or defense counsel] mishandled the defense and that a judgment for [the underlying plaintiff] in excess of the case's true value would have resulted from [the] malpractice. [The excess carrier]'s entitlement to damages will thus depend on proof that the true value of [the underlying] claim was less than [the settlement amount] but that [the] malpractice inflated its value. Assuming such proof, [the excess carrier] may then recover as damages the difference between the true and inflated value less any amount saved by the settlement.

*Id*. The *Keck* court further defined "true value" in that case as the recovery the underlying plaintiff "would have obtained following a trial in which [the underlying defendant] had a reasonably competent, malpractice-free defense." *Id*.[1]

---

[1] While the court's opening sentence in the quoted passage ("excessive in the abstract . . .") could be interpreted as suggesting that a proper analysis might compare a settlement following malpractice-free representation and a settlement following malpractice-marred

2

Although the issue addressed in this passage was not squarely before it, the *Keck* court was providing direction to the trial court in the event of a trial on remand.

The case presently before us, however, is distinguishable on its facts from *Keck*. Here, it is the defendant in the original action, Daneshjou, rather than an equitable subrogee as in *Keck*, who brings the legal malpractice action. More importantly, instead of settlement occurring prior to a verdict in the underlying action, as occurred in *Keck*, here, the parties to the underlying action settled *after* the jury had reached its verdict.[2] Although the reasoning employed in *Keck* may be of some benefit, the fact situations in the two cases are too dissimilar for *Keck* to fully govern our analysis. Nothing in the *Keck* opinion can be read as pronouncing a broadly applicable rule for damages in malpractice actions; to the contrary, it appears to contain case-specific instructions for remand in that particular case.

Under the facts and evidence presented in this case, where Bateman was found to have committed malpractice in the trial and a settlement occurred after a verdict was reached in the underlying action, the proper measure of damages would be to ascertain the difference between the value of the settlement which occurred and the value of a settlement had Bateman not negligently handled the defense. *See Haynes & Boone v. Bowser Bouldin, Ltd.*, 864 S.W.2d 662, 672 (Tex. App.—San Antonio 1993), *rev'd in part on other grounds*, 896 S.W.2d 179 (Tex. 1995); *Heath v. Herron*, 732 S.W.2d 748, 753 (Tex. App.—Houston [14th Dist.] 1987, writ denied); State Bar of Tex., Texas Pattern Jury Charges—Malpractice

representation, the court ultimately concludes that the "true value" of the case is what a final judgment would have contained after trial and that any savings due to settlement should be simply subtracted from the malpractice plaintiff's recovery. *Keck*, 20 S.W.3d at 703. The court, however, does not explain why this should be so.

[2] It is also noteworthy in this case that there is limited evidence regarding why the settlement reached was such a deep discount from the amount awarded by the jury.

PJC 84.3, cmt. (2010). Simply stating the value of the underlying lawsuit as the $8.2 million jury verdict in the underlying case and crediting Bateman with the entire difference between that verdict and the amount of the settlement, as the plurality suggests should be done, would not measure the impact Bateman's malpractice had on the amount of settlement (*i.e.*, did the malpractice increase the amount of the settlement above what it would have been absent any malpractice?). The true measure of Daneshjou's damages is how much more he had to pay (if any) due to Bateman's malpractice.[3] Comparing the settlement to the underlying jury verdict does not determine the degree to which Daneshjou was actually damaged by Bateman's malpractice.[4]

Although I disagree with the plurality's analysis on this issue, I cannot disagree with the disposition for three reasons. First, I agree that Daneshjou's argument that the jury found Daneshjou was damaged by Bateman in the amount of $300,000 is not a correct reading of the verdict. As the plurality properly emphasizes, the jury was asked to determine "[t]he amount of damages, if any, assessed against Daneshjou in the underlying lawsuit caused by the failure of Bateman to properly defend the lawsuit." The jury should have been asked to measure the difference between the value of the settlement which occurred and the value of a settlement had Bateman not negligently handled the defense. Second, Daneshjou did not object to the charge submitted to the jury, so he cannot now complain that it was an improperly formulated charge. *See, e.g., Small v.*

---

[3] There is no reason to discuss in this concurring opinion the apparent fact that Daneshjou did not himself fund the settlement.

[4] The plurality's methodology, deducting the underlying settlement amount from the amount a jury finds was caused by an attorney's malpractice in the underlying litigation, also could discourage settlement in cases where a defendant believed he or she had been negligently represented. It is the policy of this state to encourage settlement of lawsuits. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 154.002.

*McMaster*, 352 S.W.3d 280, 282 n.1 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Third, as the plurality also properly explains, Daneshjou did not bring forward a reporter's record containing the evidence adduced at trial; consequently, we cannot assess whether the trial court properly rendered a take nothing judgment, even had it applied a proper measure of damages in this case. *See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002) (per curiam).

Accordingly, I concur in the result reached in the plurality.


/s/ Martha Hill Jamison
Justice


Panel consists of Justices Frost, Christopher, and Jamison (Christopher, J., plurality) (Frost, J., concurring).